James H. Hohenstein
Warren E. Gluck
HOLLAND & KNIGHT LLP
195 Broadway
New York, NY 10007-3189
(212) 513-3200
jim.hohenstein@hklaw.com
warren.gluck@hklaw.com

Attorneys for Plaintiff,
*Lemvig Oil Trading S.A.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



LEMVIG OIL TRADING S.A.,

        Plaintiff,

    -against-

WILLIS TRADING LTD. and EAST-WEST
LOGISTICS LLP

        Defendants.

09 Civ. _____

**VERIFIED**
**COMPLAINT**

Plaintiff, Lemvig Oil Trading S.A. ("Lemvig" or "Plaintiff"), by and through its

attorneys, Holland & Knight LLP, for its verified complaint against Willis Trading Ltd.

("Willis") and East-West Logistics LLP ("EW"), alleges as follows:

    1.    This is a case of admiralty and maritime jurisdiction as hereinafter more fully

appears and is a maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil

Procedure.

2.      At all times material herein, Lemvig is and was a business entity organized under the laws of a foreign nation, with a place of business at 6, Rue de la Confederation, 1204, Geneva, Switzerland.

3.      Upon information and belief, at all times material herein, Willis is and was a business entity organized under the laws of a foreign nation, with a place of business at Suite 2, Portland House, Glacis Road, Gibraltar.

4.      Upon information and belief, at all times material herein, EW is and was a business entity organized under the laws of a foreign nation, with a place of business at Lasenby House, 32 Kingly Street, London, W1B 5QQ, England.

## LEMVIG'S CLAIM AGAINST WILLIS AND EW FOR CONVERSION

5.      On or about August 21, 2009, Lemvig as seller and Willis as buyer entered into an agreement for the sale of 2,311 metric tons of hydropurified gas oil ("HGO"), plus or minus ten percent in seller's option, on CIF terms ("Sales Agreement No. 1"). A true and correct copy of Sales Agreement No. 1 is attached hereto as Exhibit 1.

6.      On or about August 22, 2009, Lemvig as seller and Willis as buyer entered into an agreement for the sale of 2,184 metric tons of HGO, plus or minus ten percent in seller's option, on CIF terms ("Sales Agreement No. 2"). A true and correct copy of Sales Agreement No. 2 is attached hereto as Exhibit 2. Collectively, Sales Agreement No. 1. and Sales Agreement No. 2 shall be referred to as "The Sales Agreements."

7.      Clause 7 of The Sales Agreements provide that the HGO was to be delivered "CIF" to Kerch or Theodessia, Ukraine, and that discharge of HGO is not to commence before

Lemvig's receipt of Willis' letter of credit or prepayment in accordance with clause 11 of The Sales Agreements.

8.      Clause 11 of The Sales Agreements obligated Willis to open either (1) an irrevocable letter of credit (in accordance with various conditions) for Lemvig's benefit, or (2) in the alternative, make full prepayment to Lemvig of the purchase price. For Sales Agreement No. 1, Willis was required to perform, at the latest, by August 27, 2009; for Sales Agreement No. 2, Willis was required to perform, at the latest, by August 31, 2009.

9.      In accordance with its obligations pursuant to Clause 7 of The Sales Agreements, Lemvig nominated EW, a freight forwarding company, to provide for the maritime transportation of the HGO cargoes to Kerch or Theodessia, Ukraine. Attached hereto as Exhibit 3 is a true and correct copy of EW's invoice to Lemvig for transportation of the HGO cargoes at issue in this dispute, as well as the wire transfer confirmation evidencing Lemvig's payment to EW.

10.     According to Willis' website, http://willis-trading.com/index.php, EW is Willis' "main logistics partner."

11.     It appears that Willis as seller, and a third party, Monolith Investments and Financial Services Ltd. S.A. ("Monolith"), as buyer, entered into two sales agreements with respect the same HGO cargoes (the "Third Party Contracts"). On August 28, 2009, Willis purported to assign its payment obligations under The Sales Agreements to Monolith. True and correct copies of the purported assignments by Willis are attached hereto as Exhibit 4.

12.     Clause 17 of the Sales Agreements, entitled "Assignment" provides as follows:

This agreement shall be binding upon the respective successors and assigns of the parties hereto. Neither seller nor buyer shall assign the whole or any part its right and obligations hereunder directly or indirectly without the prior written consent of the other party. If such written consent is given and whenever the assignment is

3

made, the assigning party shall remain jointly and severally liable with the assignee for the full performance of its obligations under this agreement.

13.     Lemvig never consented in writing or otherwise to Willis assigning its obligations under the Sales Agreements to any third party.

14.     Within the time required, Willis had failed to make any payment pursuant to The Sales Agreements nor open the letters of credit as required by Clause 11 of the Sales Agreements. Due to Willis' breaches of the Sales Agreements, on September 16, 2009, Lemvig issued letters to Willis notifying Willis that (1) Lemvig was cancelling the Sales Agreements pursuant to its rights under Clause 11 of the Sales Agreements, and (2) due to Willis' breach, the Sales Agreements were "null and void" (the "Cancellation Letters"). True and correct copies of the cancellation letters are attached hereto as Exhibit 5.

15.     Also on September 16, 2009, Lemvig issued letters to EW, instructing EW to direct the vessels EW had arranged for the HGO cargoes' transportation, the M/T GRAF and the M/T NEFTERUDOVOZ-49M, respectively (the "Vessels"), to immediately sail to the port of Varna, Bulgaria and await further instructions (the "Instruction Letters"). Attached hereto as Exhibit 6 are true and correct copies of the Instruction Letters. EW has ignored Lemvig's instructions to direct the Vessels to Varna, Bulgaria, and EW and Willis and have refused to disclose the location of the Vessels or Lemvig's cargo to Lemvig.

16.     To date, Lemvig has not received any payment for the HGO pursuant to the Sales Agreements or otherwise, from Willis or otherwise, remains the rightful owner of the HGO cargoes, and has received no communications from Willis or EW. The location and whereabouts of the Vessels and/or the HGO is unknown, but Lemvig has obtained information from industry sources that the HGO has been discharged.

17.    Willis and EW are business partners, have common ownership interests, and have common management and personnel.

18.    Willis and EW have jointly deprived Lemvig of its rights to and the use of its property - the HGO that is the subject of The Sales Agreements.

19.    Despite repeated requests, Willis and EW have refused to disclose the location of Lemvig's property or return Lemvig's property to Lemvig.

20.    Lemvig's property, the HGO, was loaded on to the Vessels on August 10, 2009, and August 15, 2009, respectively.

21.    Willis and EW deprived Lemvig of the use and possession of its property subsequent to their refusal acknowledge and/or act in accordance with the Cancellation Letters and the Instruction Letters, which letters were issued while the HGO was aboard the Vessels.

22.    Willis and EW's actions constitute the maritime tort of conversion.

23.    As a result of Willis and EW's conversion of Lemvig's property, Lemvig has been damaged in the principal amount of $2,771,535.21 -- the value of the HGO according to the terms of the Sales Agreements.

24.    Willis and EW are jointly and severally liable for Lemvig's damages proximate to the conversion of Lemvig's property.

25.    It is estimated that it will take approximately three years for Lemvig to resolve this dispute. Accordingly, Lemvig also seeks interest, at the rate of 5% per year, in addition to Lemvig's principal damages, amounting to $415,730.282 ($2,771,535.21 x 0.05 x 3).

26.    Thus, Lemvig seeks a total of $3,187,265.49 for its conversion claim against Willis and EW, for which amount Willis and EW are jointly and severally liable.

5

27.     It is common practice in the maritime industry to require that payments be made in U.S. Dollars and payments are made in U.S. Dollars in conformance with these requirements. As evidenced by the terms of the Sales Agreements, the Third Party Contracts and the Freight Contract, Willis Trading Ltd. and East-West Logistics LLP regularly make and receive wire transfers in U.S. Dollars.

28.     International electronic fund transfers in U.S. Dollars entities pass through intermediary banks in New York.

### Request For Maritime Attachment

29.     Willis Trading Ltd. and East-West Logistics LLP are not found within the Southern District of New York but do transact business in U.S. Dollars.  Hence, Willis Trading Ltd. and East-West Logistics LLP do have, or will have during the pendency of this proceeding, assets, goods, chattels, credits, letters of credit, bills of lading, debts, effects and monies, funds, credits, wire transfers, accounts, letters of credit, electronic fund transfers, freights, sub-freights, charter hire, sub-charter hire, or other tangible or intangible property which belongs to them, is claimed by them, is being held for them or on their behalf, or which are being transferred for their benefit, within the jurisdiction at the following financial institutions:  ABN Amro Bank; American Express Bank; Banco Popular; Bank of America, N.A.; Bank of China; Bank Leumi USA; The Bank of New York; Bank of Tokyo-Mitsubishi UFJ Ltd.; BNP Paribas; Calyon Investment Bank; Citibank, N.A.; Commerzbank; Deutsche Bank Trust Company Americas; HSBC Bank USA, N.A.; JPMorgan Chase Bank, N.A.; Standard Chartered Bank; Société Générale; UBS AG; Wachovia Bank, N.A.; or any other financial institution within the Southern District of New York.

**WHEREFORE**, plaintiff Lemvig Oil Trading S.A. prays:

1.      That a summons with process of attachment and garnishment may issue against the defendants Willis Trading Ltd. and East-West Logistics LLP in the amount of $3,187,265.49 (including estimated interest), and if defendants Willis Trading Ltd. and East-West Logistics LLP cannot be found, then that their goods, chattels, credits, letters of credit, bills of lading, debts, effects and monies, funds, credits, wire transfers, accounts, letters of credit, electronic fund transfers, freights, sub-freights, charter hire, sub-charter hire, or other tangible or intangible property which belongs to them, is claimed by them, is being held for them or on their behalf, or which is being transferred for their benefit, within the district may be attached in an amount sufficient to answer Lemvig's claim;

2.      That defendants Willis Trading Ltd. and East-West Logistics LLP and any other person claiming an interest therein may be cited to appear and answer the matters aforesaid;

3.      That this court recognize and confirm any judgment(s) rendered on the claims set forth herein as a Judgment of this Court;

4.      That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof; and

5.      That judgment be entered in favor of Lemvig Oil Trading S.A. and against Willis Trading Ltd. and East-West Logistics LLP in the amount of $3,187,265.49 (including estimated interest); and,

6.    That this Court grant Lemvig Oil Trading S.A. such other and further relief which it may deem just and proper.

Dated: New York, New York
        September 21, 2009

HOLLAND & KNIGHT LLP

By: _____
        James H. Hohenstein
        Warren E. Gluck
        HOLLAND & KNIGHT LLP
        195 Broadway
        New York, New York  10007-3189
        Tel.:    (212) 513-3200
        Fax:    (212) 385-9010
        E-mail:  jim.hohenstein@hklaw.com
                    warren.gluck@hklaw.com

        Attorneys for Plaintiff,
        *Lemvig Oil Trading S.A.*

## VERIFICATION

STATE OF NEW YORK           )
                            :ss.:
COUNTY OF NEW YORK          )

James H. Hohenstein, being duly sworn, deposes and says:

I am a member of the firm of Holland & Knight LLP, counsel for Lemvig Oil Trading S.A. ("Lemvig"), plaintiff in the foregoing action. I have read the foregoing Verified Complaint and know the contents thereof, and the same are true and correct to the best of my knowledge. I have reviewed documentation provided to me by Lemvig's representative and corresponded with Lemvig's representatives regarding this matter. I am authorized by Lemvig to make this verification, and the reason for my making it as opposed to an officer or director of Lemvig is that there are none within the jurisdiction of this Honorable Court.

_____
James H. Hohenstein

Sworn to before me this
21st day of September, 2009

_____
Notary Public

Anthony C. Keeney
Notary Public, State of New York
NO. 01KE6181777
Qualified in Westchester County
Certificate Filed in New York County
Commission Expires February 11, 20___

# 8844326_v1

9

# EXHIBIT 1

```
TO          : WILLIS OIL LTD.
FROM        : LEMVIG OIL TRADING SA, GENEVA
DATE        : 21ST AUGUST 2009
REF         : 210809 (PLEASE QUOTE IN ALL CORRESPONDENCE)
SUBJECT     : LEMVIG OIL TRADING SALE OF GASOIL
```

WE REFER TO THE DISCUSSIONS OF 21ST AUGUST 2009 AND WE ARE PLEASED TO CONFIRM OUR AGREEMENT WITH THE FOLLOWING CONTRACT:

SELLER:     LEMVIG OIL TRADING S.A.
            6, RUE DE LA CONFEDERATION
            1204 GENEVA
            SWITZERLAND


2. BUYER:   WILLIS TRADING LTD.
            SUITE 2, PORTLAND HOUSE
            GLACIS ROAD, GIBRALTAR


3. PRODUCT:

    HYDROPURIFIED GAS OIL


4. TERMS

    CIF IN ACCORDANCE WITH INCOTERMS 2000 FOR CIF SALES, SAVE AS SET OUT HEREIN.


5. QUANTITY:

    2,311 METRIC TONNES PLUS OR MINUS 10 (TEN) PER CENT IN SELLER'S OPTION


6. QUALITY:

    AS PER ACTUAL QUALITY LOADED AT TURKMENBASHI, TURKMENISTAN, ON MT «GRAF» BL DATED 10.08.2009


7. DELIVERY:

    CIF KERCH OR CIF THEODOSSIA, UKRAINE ONE SAFE PORT/ONE SAFE BERTH BY ONE SHIPMENT LOT DURING AUGUST 26TH – SEPTEMBER 15TH 2009 (BOTH DATES INCLUSIVE) SUBJECT TO ALL GOING WELL AND PERILS OF THE SEA ON MT "GRAF"/SUB. THE VESSEL HAS BEEN ALREADY APROVED BY BUYER/RECEIVER/DISPORT AND SHALL START DISCHARGE IMMEDIATELY UPON ARRIVAL AT DISPORT.
    DISCHARGE NOT TO START BEFORE SELLER'S RECEIPT OF LETTER OF CREDIT OR PREPAYMENT AS PER CLAUSE 11 OF THE PRESENT CONTRACT.
    DATE OF NOR TENDERED AT DISPORT IS CONSIDERED THE DELIVERY DATE.

*A.V.*

8. INSURANCE:

SELLER SHALL ARRANGE INSURANCE AGAINST MARINE RISKS FOR THE BENEFIT OF THE BUYER FOR A MINIMUM OF 110% OF THE INVOICE VALUE. SUCH INSURANCE SHALL BE ON THE BASIS OF THE INSTITUTE BULK OIL CLAUSES OR NO LESS FAVOURABLE TERMS AND SHALL INCLUDE THE RISK OF CONTAMINATION.

9. PRICE:

BASIS CIF KERCH OR CIF THEODOSSIA, UKRAINE ONE SAFE PORT/ONE SAFE BERTH IN USD PER METRIC TONNE IN VACUUM SHALL BE CALCULATED AS FOLLOWS:

PRICE WILL BE THE AVERAGE OF THE HIGH QUOTATIONS OF 10 PPM ULSD PUBLISHED IN PLATTS EUROPEAN MARKETSCAN UNDER THE HEADING "CIF MED (GENOVA/LAVERA)" PLUS A PREMIUM OF USD 3.00 (THREE) PER METRIC TONNE IN VACUUM.
ESCALATION/DE-ESCALATION TO APPLY ARITHMETICALLY BASED ON ACTUAL DENSITY AT 20 DEG C VERSUS DENSITY AT 20 DEG C 0.845 ALWAYS CONSISTENT WITH INDEPENDENT INSPECTOR SGS QUALITY ANALYSIS REPORT ISSUED AT LOADPORT TURKMENBASHI, TURKMENISTAN.

PRICING PERIOD: AVERAGE OF THE HIGH QUOTATIONS AS VALID FOR 3 (THREE) CONSECUITIVE PUBLISHED AND VALID PLATTS EUROPEAN MARKETSCAN QUOTATIONS IMMEDIATELY FOLLOWING (AFTER) NOR TENDERED AT DISPORT DATE (NOR TENDER DATE TO COUNT AS DAY 0). THE FINAL PRICE SHALL BE CALCULATED TO TWO DECIMAL PLACES.

THE AMOUNT OF PRODUCT TO BE INVOICED WILL BE BASED ON BILL OF LADING FIGURES IN VACUUM IN METRIC TONNES.

THE FINAL PRICE SHALL BE CALCULATED TO TWO DECIMAL PLACES.

10. PAYMENT TERMS:

NOT LATER THAN 2 (TWO) GENEVA/USA WORKING DAYS FROM THE DATE OF THE LAST PRICING PERIOD DATE AGAINST SELLER'S FINAL INVOICE (FAX OR EMAIL COPY ACCEPTABLE, SHOWING DEDUCTION OF PREPAYMENT IF ANY)

PAYMENT SHALL BE MADE IN FULL BY BUYER BY TELEGRAPHIC TRANSFER IN US DOLLARS IN CLEARED FUNDS WITHOUT ANY OFFSET, DEDUCTION, COUNTER-CLAIM OR WITHHOLDING TO SELLERS NOMINATED ACCOUNT.

IF THE PAYMENT IS NOT RECEIVED WHEN DUE, BUYER SHALL INCUR INTEREST FROM THE DAY WHICH PAYMENT IS DUE UNTIL THE DATE THAT PAYMENT IS ACTUALLY RECEIVED BY SELLER. IN CASE OF DELAY IN PAYMENT THE BUYERS ARE TO PAY TO THE SELLERS PENALTIES AT THE RATE OF LIBOR PLUS 3% PER ANNUM OF THE AMOUNT DUE TO BE PAID FOR THE WHOLE PERIOD OF DELAY.

IF PAYMENT DUE DATE FALLS ON A SATURDAY OR NEW YORK BANK HOLIDAY OTHER THAN A MONDAY, PAYMENT WILL BE EFFECTED ON THE PRECEEDING NEW YORK BANKING DAY.
IF PAYMENT DUE DATE FALLS ON A SUNDAY OR MONDAY NEW YORK BANK HOLIDAY, PAYMENT TO BE EFFECTED ON THE FIRST FOLLOWING NEW YORK BANKING DAY.

*A.K.*

11.   SECURITY

LATEST 27.08.2009 BUYER SHALL OPEN AN IRREVOCABLE LETTER OF CREDIT FROM FIRST CLASS EUROPEAN BANK ACCEPTED BY SELLER AND SELLER'S BANK, IN A WORDING ACCEPTABLE TO SELLER AND SELLER'S BANK AND PAYABLE AT SELLER'S BANK COUNTERS WITH COPY TO SELLERS.

COPY OF THIS LETTER OF CREDIT TO BE SENT TO LEMVIG OIL TRADING S.A. GENEVA, ATTN MILA ZAKHAROVA AT M.ZAKHAROVA@LEMVIG.CH

THE BANK OPENING THE LETTER OF CREDIT MUST BE ACCEPTED BY THE SELLER'S ADVISING BANK. IN CASE SELLER'S ADVISING BANK REQUIRES BUYER'S BANK TO HAVE THE LETTER OF CREDIT CONFIRMED THEN THE COSTS OF CONFIRMATION WILL BE FOR THE BUYER.
ALL BANKING CHARGES ARE FOR BUYER'S ACCOUNT, EXCEPT ADVISING COSTS WHICH ARE FOR THE SELLER'S ACCOUNT.

INSTEAD OF OPENING LETTER OF CREDIT AS STATED ABOVE, BUYER HAS THE RIGHT TO MAKE PREPAYMENT TO THE SELLER LATEST 27.08.2009. PREPAYMENT SHALL BE MADE IN FULL BY BUYER BY TELEGRAPHIC TRANSFER IN US DOLLARS IN CLEARED FUNDS WITHOUT ANY OFFSET, DEDUCTION, COUNTER-CLAIM OR WITHHOLDING TO SELLERS NOMINATED ACCOUNT AGAINST SELLER'S PPREPAYMENT INVOICE (FAX OR EMAIL COPY) BASED ON LATEST AVAILABLE PLATTS QUOTATION.
IN CASE OF DELAY OF PREPAYMENT RECEIPT TO SELLER'S ACCOUNT BUYER IS RESPONSIBLE FOR ALL DEMURRAGE OCCURED DUE TO THIS DELAY. UPON RECEIPT OF THIS PREPAYMENT AT SELLER'S BANK ACCOUNT SELLER SHALL INSTRUCT THE VESSEL TO DISCHARGE THE PRODUCT. FINAL PAYMENT SHALL BE DONE ACCORDING TO CLAUSE 10 OF THE PRESENT CONTRACT.

IN CASE OF DELAY OF PREPAYMENT OR LETTER OF CREDIT RECEIPT BY SELLER BUYER IS RESPONSIBLE FOR ALL DEMURRAGE OCCURED DUE TO THIS DELAY.

VESSEL WILL NOT DISCHARGE UNTIL RECEIPT OF PREPAYMENT IN FULL AT SELLER'S BANK ACCOUNT OR RECEIPT BY SELLER OF LETTER OF CREDIT ISSUED AS STATED ABOVE.

THE OPENING OR ISSUANCE OF ANY LETTER OF CREDIT OR PREPAYMENT SHALL NOT DISCHARGE BUYER'S PAYMENT OBLIGATIONS UNDER THIS CONTRACT AND SUCH PAYMENT OBLIGATIONS SHALL BE DISCHARGED ONLY TO THE EXTEND OF SELLER'S ACTUAL RECEIPT OF PAYMENT UNDER THE LETTER OF CREDIT OR FINAL SETTLEMENT IN CASE SELLER MAKES PREPAYMENT INSTEAD OF OPENING LETTER OF CREDIT.

FAILURE BY BUYER TO DELIVER TO SELLER THE ORIGINAL LETTER OF CREDIT INCLUDING ALL REQUIRED AMENDMENTS OR MAKE PREPAYMENT AS SPECIFIED ABOVE SHALL BE CONSIDERED A BREACH OF THIS CONTRACT. UPON SUCH BREACH, SELLER SHALL HAVE THE RIGHT UPON WRITTEN NOTICE TO BUYER TO CANCEL THIS CONTRACT WITHOUT IN ANY WAY LIMITING ANY OTHER REMEDIES AVAILABLE

12.   DETERMINATION OF QUANTITY AND QUALITY:

QUANTITY IN MT AS STATED IN BILL OF LADING ISSUED AT TURKMENBASHI AND QUALITY STATED IN SGS QUALITY REPORT ISSUED AT LOADPORT TURKMENBASHI, TURKMENISTAN, SHALL BE FINAL AND BINDING UPON BOTH PARTIES.

13. LAYTIME:

LAYTIME AT DISPORT AS PER CP

14. DEMURRAGE:

DEMURRAGE AT DISPORT AS PER CP.

15. TITLE & RISK:

TITLE TO AND RISK OF LOSS SHALL PASS FROM SELLER TO BUYER AT LOADPORT AS THE PRODUCT PASSES THE CONNECTION BETWEEN VESSEL'S MANIFOLD AND FLANGE OF SUPPLYING SHORELINE.

16. FORCE MAJEURE:

IN THE EVENT EITHER PARTY IS RENDERED UNABLE, WHOLLY OR IN PART, TO PERFORM ITS OBLIGATIONS UNDER THIS AGREEMENT OTHER THAN TO MAKE PAYMENTS DUE HEREUNDER DUE TO ACTS OF GOD, FLOOD, FIRE, EXPLOSION; NAVIGATIONAL ACCIDENTS; VESSEL DAMAGE OR LOSS; ACCIDENTS AT OR CLOSING OF NAVIGATIONAL OR TRANSPORTATIONAL MECHANISMS; ADVERSE WEATHER OR STORMS; STRIKES, GRIEVANCES OR ACTIONS BY OR AMONG WORKERS, LOCKOUTS, OR OTHER LABOR DISTURBANCES; WARS OR ANY LAW, RULE, ORDER, OR ACTION OF ANY COURT OR INSTRUMENTALITY OF THE FEDERAL, STATE OR LOCAL GOVERNMENT OR BY ANY PERSON PURPORTING TO REPRESENT A GOVERNMENT; OR FOR ANY OTHER CAUSE OR CAUSES BEYOND ITS REASONABLE CONTROL, IT IS AGREED THAT ON SUCH PARTY'S GIVING NOTICE AND FULL PARTICULARS OF SUCH FORCE MAJEURE TO THE OTHER PARTY WITHIN 48 HOURS, THE OBLIGATION OF THE PARTY GIVING SUCH NOTICE SHALL BE SUSPENDED FROM THE DATE OF RECEIPT OF SUCH NOTICE AND FOR THE CONTINUANCE OF ANY INABILITY SO CAUSED, BUT FOR NO LONGER PERIOD, AND SUCH CAUSE SHALL, SO FAR AS POSSIBLE, BE REMEDIED WITH ALL REASONABLE DISPATCH.

IF ANY FAILURE, OMISSION OR DELAY IN PERFORMANCE DUE TO FORCE MAEJURE CONTINUES FOR MORE THAN THIRTY (30) DAYS FROM THE DATE THE NOTICE OF SUCH FORCE MAJEURE EVENT IS SENT, THEN EITHER PARTY MAY TERMINATE THIS AGREEMENT BY WRITTEN NOTICE TO THE OTHER PARTY, AND UPON ANY SUCH TERMINATION, NEITHER PARTY SHALL HAVE ANY FURTHER LIABILITY TO THE OTHER EXCEPT THAT SUCH TERMINATION SHALL BE WITHOUT PREJUDICE TO ANY OTHER ACCRUED RIGHTS.

17. ASSIGNMENT:

THIS AGREEMENT SHALL BE BINDING UPON THE RESPECTIVE SUCCESSORS AND ASSIGNS OF PARTIES HERETO. NEITHER SELLER NOR BUYER SHALL ASSIGN THE WHOLE OR ANY PART OF ITS RIGHTS AND OBLIGATIONS HEREUNDER DIRECTLY OR INDIRECTLY WITHOUT THE PRIOR WRITTEN CONSENT OF THE OTHER PARTY. IF SUCH WRITTEN CONSENT IS GIVEN AND WHENEVER THE ASSIGNMENT IS MADE, THE ASSIGNING PARTY SHALL REMAIN JOINTLY AND SEVERALLY LIABLE WITH THE ASSIGNEE FOR THE FULL PERFORMANCE OF ITS OBLIGATIONS UNDER THIS AGREEMENT.

18. WARRANTIES:

A.K.

EXCEPT FOR THE WARRANTY OF TITLE, NO CONDITIONS OR WARRANTIES, EXPRESSED OR IMPLIED, OF MERCHANTABILITY, FITNESS OR SUITABILITY FOR ANY PARTICULAR PURPOSE, OR OTHERWISE, ARE MADE BY SELLER OTHER THAN THAT THE PRODUCT CONFORMS WITHIN ANY TOLERANCES TO THE DESCRIPTION STATED HEREIN.

19. GOVERNING LAW AND JURISDICTION:

THIS CONTRACT SHALL BE CONSTRUED AND GOVERNED BY THE LAWS OF ENGLAND WITH JURISDICTION IN THE HIGH COURT OF ENGLAND AND WALES TO THE EXCLUSION OF ANY OTHER LEGAL SYSTEM.

RESOLUTION OF DISPUTES ARISING UNDER THIS AGREEMENT BY ARBITRATION IS SPECIFICALLY EXCLUDED.

IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES OR LOST PROFITS OR SPECIFIC PERFORMANCE.

20. NON-PERFORMANCE CLAUSE:

SUBJECT OF BANKRUPTCY OR INSOLVENCY PROCEEDINGS, OR (E) FAIL TO PAY ANY UNDISPUTED OBLIGATION TO THE OTHER PARTY (THE PERFORMING "PARTY") IN AN AMOUNT GREATER THAN USD 500,000 AND SUCH FAILURE CONTINUES FOR TWO (2) BUSINESS DAYS AFTER WRITTEN NOTICE OF NON-PAYMENT BY THE PERFORMING PARTY; THEN THE PERFORMING PARTY MAY (IN ADDITION TO ALL OTHER RIGHTS IT MAY HAVE) BY WRITTEN NOTICE IMMEDIATELY LIQUIDATE THE AGREEMENT, ANY OTHER FORWARD CONTRACTS, AND ALL DERIVATIVE, OPTION, AND SWAP AGREEMENTS THEN OUTSTANDING BETWEEN THE PARTIES. UPON LIQUIDATION, THIS AGREEMENT, ALL FORWARD CONTRACTS, AND ALL DERIVATIVE, OPTION, AND SWAP AGREEMENTS SHALL TERMINATE AND THE PERFORMING PARTY SHALL CALCULATE THE DIFFERENCE BETWEEN THE MARKET VALUE (BASED ON THEN CURRENT MARKET PRICE FOR DELIVERY AS CONTRACTED) AND CONTRACT VALUE (BASED ON THE CONTRACTED QUANTITY AND PRICES) OF EACH TERMINATED CONTRACT /AGREEMENT. IN EACH CASE WHERE THE MARKET VALUE EXCEEDS THE CONTRACT VALUE, THE DIFFERENCE SHALL BE DUE TO THE BUYER; WHERE THE CONTRACT VALUE EXCEEDS THE MARKET VALUE, THE DIFFERENCE SHALL BE DUE TO THE SELLER. EACH CALCULATED AMOUNT SHALL BE DISCOUNTED TO PRESENT VALUE AT THE THEN-PREVAILING LIBOR RATE ON EURODOLLAR DEPOSITS FOR THE APPLICABLE DISCOUNTED TIME PERIOD, AS OF THE DATE OF LIQUIDATION, AND THE DISCOUNTED AMOUNTS SHALL BE AGGREGATED AND SET-OFF TO A SINGLE NET LIQUIDATED AMOUNT PAYABLE ON WRITTEN DEMAND BY ONE PARTY TO THE OTHER. SUCH DEMAND SHALL INCLUDE A STATEMENT IN REASONABLE DETAIL AS TO THE CALCULATED AMOUNTS. THE PARTIES WAIVE ALL OTHER NOTICES, INCLUDING NOTICE OF INTENT TO LIQUIDATE.

IF IN THE REASONABLE OPINION OF THE OTHER PARTY, A MATERIAL ADVERSE CHANGE OCCURS IN THE FINANCIAL CONDITION OF EITHER PARTY THAT, IN THE REASONABLE OPINION OF SUCH OTHER PARTY, MATERIALLY AND ADVERSELY AFFECTS THE ABILITY OF SUCH PARTY TO PERFORM ITS OBLIGATIONS UNDER THIS CONTRACT, SUCH PARTY SHALL WITHIN A REASONABLE TIME FOLLOWING A WRITTEN REQUEST MADE AT ANY TIME AFTER SUCH CHANGE PROVIDE SECURITY IN FORM AND SUBSTANCE REASONABLY SATISFACTORY TO THE REQUESTING PARTY. FAILURE TO PROVIDE SECURITY SHALL CONSTITUTE A DEFAULT BY SUCH PARTY UNDER THIS AGREEMENT AND SUBJECT IT TO LIQUIDATION AS DESCRIBED ABOVE.

IF ANY GUARANTY SECURING ANY PARTY'S OBLIGATIONS UNDER THIS CONTRACT CEASES TO BE IN FULL FORCE AND EFFECT, OR IF ANY GUARANTOR OF A PARTY'S OBLIGATIONS UNDER THIS AGREEMENT BECOMES THE SUBJECT OF BANKRUPTCY OR INSOLVENCY PROCEEDINGS, SUCH EVENT SHALL ALSO CONSTITUTE A DEFAULT AND SUBJECT THIS AGREEMENT TO LIQUIDATION AS DESCRIBED ABOVE.

IF A DEFAULT OCCURS, THE PERFORMING PARTY, MAY WITHOUT LIMITATION OF ITS RIGHTS UNDER THIS SECTION, SET OFF AMOUNTS WHICH THE NON-PERFORMING PARTY OWES TO IT AGAINST ANY AMOUNTS WHICH IT OWES TO THE NON-PERFORMING PARTY (WHETHER HEREUNDER, UNDER A FORWARD CONTRACT OR OTHERWISE) AND WHETHER OR NOT THEN DUE; PROVIDED THAT ANY AMOUNT NOT THEN DUE WHICH IS INCLUDED IN SUCH SET-OFF SHALL BE DISCOUNTED TO PRESENT VALUE AT THE TIME OF SET-OFF (TO TAKE ACCOUNT OF THE PERIOD BETWEEN THE TIME OF SET-OFF AND THE DATE ON WHICH SUCH AMOUNT WOULD OTHERWISE HAVE BEEN DUE) AT THE THEN-PREVAILING LIBOR RATE ON EURODOLLAR DEPOSITS FOR THE APPLICABLE DISCOUNTED TIME PERIOD

21 OTHER TERMS AND CONDITIONS:

THIS DOCUMENT SHALL BE THE OPERATIVE INSTRUMENT AND SUPERSEDES AND REPLACES ALL PREVIOUS CORRESPONDENCE. NO AMENDMENTS, ADDITIONS, OR ALTERATIONS MAY BE MADE TO THE TERMS AND CONDITIONS OF THIS AGREEMENT WITHOUT WRITTEN AGREEMENT OF BOTH PARTIES.

THIS AGREEMENT SHALL NOT BE SUBJECT TO MODIFICATION OR WAIVER BY ANY COURSE OF PERFORMANCE, COURSE OF DEALING OR USAGE OF TRADE.

WAIVER OF PERFORMANCE OF ANY OBLIGATION BY EITHER BUYER OR SELLER SHALL NOT BE DEEMED A WAIVER OF PERFORMANCE OF OTHER OBLIGATIONS OR FUTURE WAIVER OF THE SAME OBLIGATION.

WHERE NOT IN CONFLICT WITH THE FOREGOING BP GENERAL TERMS AND CONDITIONS SHALL APPLY.

THIS AGREEMENT CONFIRMS OUR ENTIRE AGREEMENT. IN THE EVENT THE ABOVE TERMS AND CONDITIONS ARE NOT IN ACCORDANCE WITH YOUR UNDERSTANDING, PLEASE RESPOND TO THE FOREGOING WITHIN 2 (TWO) WORKING DAYS. IF WE DO NOT HEAR FROM YOU WITHIN THAT TIME OR IF IN THE MEANTIME YOU PERFORM ANY OF YOUR OBLIGATIONS UNDER THIS CONTRACT, WE WILL CONSIDER THESE TERMS AND CONDITIONS FINAL AND BINDING. TO THE EXTENT THAT YOU OBJECT TO ANY PROVISION, THESE TERMS WILL STAND AMENDED ONLY IF AND TO THE EXTENT THAT WE AGREE, IN WRITING, WITH YOUR OBJECTION.

LEMVIG OIL TRADING S.A.                    WILLIS TRADING LTD

# EXHIBIT 2

```
TO            : WILLIS OIL LTD.
FROM          : LEMVIG OIL TRADING SA, GENEVA
DATE          : 22ND AUGUST 2009
REF           : 220809 (PLEASE QUOTE IN ALL CORRESPONDENCE)
SUBJECT       : LEMVIG OIL TRADING SALE OF GASOIL
```

WE REFER TO THE DISCUSSIONS OF 22ND AUGUST 2009 AND WE ARE PLEASED TO CONFIRM OUR AGREEMENT WITH THE FOLLOWING CONTRACT:

SELLER:    LEMVIG OIL TRADING S.A.
           6, RUE DE LA CONFEDERATION
           1204 GENEVA
           SWITZERLAND

2. BUYER:  WILLIS TRADING LTD.
           SUITE 2, PORTLAND HOUSE
           GLACIS ROAD, GIBRALTAR

3. PRODUCT:

   HYDROPURIFIED GAS OIL

4. TERMS:

   CIF IN ACCORDANCE WITH INCOTERMS 2000 FOR CIF SALES, SAVE AS SET OUT HERE IN.

5. QUANTITY:

   2,184 METRIC TONNES PLUS OR MINUS 10 (TEN) PER CENT IN SELLER'S OPTION

6. QUALITY:

   AS PER ACTUAL QUALITY LOADED AT TURKMENBASHI, TURKMENISTAN, ON MT «NEFTERUDOVOZ-49M» BL DATED 15.08.2009

7. DELIVERY:

   CIF KERCH OR CIF THEODOSSIA, UKRAINE ONE SAFE PORT/ONE SAFE BERTH BY ONE SHIPMENT LOT DURING AUGUST 31ST – SEPTEMBER 30TH 2009 (BOTH DATES INCLUSIVE) SUBJECT TO ALL GOING WELL AND PERILS OF THE SEA ON MT "NEFTERUDOVOZ-49M"/SUB. THE VESSEL HAS BEEN ALREADY APROVED BY BUYER/RECEIVER/DISPORT AND SHALL START DISCHARGE IMMEDIATELY UPON ARRIVAL AT DISPORT.
   DISCHARGE NOT TO START BEFORE SELLER'S RECEIPT OF LETTER OF CREDIT OR PREPAYMENT AS PER CLAUSE 11 OF THE PRESENT CONTRACT.
   DATE OF NOR TENDERED AT DISPORT IS CONSIDERED THE DELIVERY DATE.

   _A.K._

8. INSURANCE:

SELLER SHALL ARRANGE INSURANCE AGAINST MARINE RISKS FOR THE BENEFIT OF
THE BUYER FOR A MINIMUM OF 110% OF THE INVOICE VALUE.  SUCH INSURANCE
SHALL BE ON THE BASIS OF THE INSTITUTE BULK OIL CLAUSES OR NO LESS
FAVOURABLE TERMS AND SHALL INCLUDE THE RISK OF CONTAMINATION.

9. PRICE:

BASIS CIF KERCH OR CIF THEODOSSIA, UKRAINE ONE SAFE PORT/ONE SAFE
BERTH IN USD PER METRIC TONNE IN VACUUM SHALL BE CALCULATED AS
FOLLOWS:

PRICE WILL BE THE AVERAGE OF THE HIGH QUOTATIONS OF 10 PPM ULSD
PUBLISHED IN PLATTS EUROPEAN MARKETSCAN UNDER THE HEADING "CIF MED
(GENOVA/LAVERA)" PLUS A PREMIUM OF USD 1.00(ONE) PER METRIC TONNE IN
VACUUM.
ESCALATION/DE-ESCALATION TO APPLY ARITHMETICALLY BASED ON ACTUAL
DENSITY AT 20 DEG C VERSUS DENSITY AT 20 DEG C 0.845 ALWAYS
CONSISTENT WITH INDEPENDENT INSPECTOR SGS QUALITY ANALYSIS REPORT
ISSUED AT LOADPORT TURKMENBASHI, TURKMENISTAN.

PRICING PERIOD: AVERAGE OF THE HIGH QUOTATIONS AS VALID FOR 3 (THREE)
CONSECUITIVE PUBLISHED AND VALID PLATTS EUROPEAN MARKETSCAN QUOTATIONS
IMMEDIATELY FOLLOWING (AFTER) NOR TENDERED AT DISPORT DATE (NOR TENDER
DATE TO COUNT AS DAY 0). THE FINAL PRICE SHALL BE CALCULATED TO TWO
DECIMAL PLACES.

THE AMOUNT OF PRODUCT TO BE INVOICED WILL BE BASED ON BILL OF LADING
FIGURES IN VACUUM IN METRIC TONNES.

THE FINAL PRICE SHALL BE CALCULATED TO TWO DECIMAL PLACES.

10.PAYMENT TERMS:

NOT LATER THAN 2 (TWO) GENEVA/USA WORKING DAYS FROM THE DATE OF THE LAST
   PRICING PERIOD DATE AGAINST SELLER'S FINAL INVOICE (FAX OR EMAIL
   COPY ACCEPTABLE, SHOWING DEDUCTION OF PREPAYMENT IF ANY)

PAYMENT SHALL BE MADE IN FULL BY BUYER BY TELEGRAPHIC TRANSFER IN US
DOLLARS IN CLEARED FUNDS WITHOUT ANY OFFSET, DEDUCTION, COUNTER-CLAIM
OR WITHHOLDING TO SELLERS NOMINATED ACCOUNT.

IF THE PAYMENT IS NOT RECEIVED WHEN DUE, BUYER SHALL INCUR INTEREST
FROM THE DAY WHICH PAYMENT IS DUE UNTIL THE DATE THAT PAYMENT IS
ACTUALLY RECEIVED BY SELLER.  IN CASE OF DELAY IN PAYMENT THE BUYERS
ARE TO PAY TO THE SELLERS PENALTIES AT THE RATE OF LIBOR PLUS 3% PER
ANNUM OF THE AMOUNT DUE TO BE PAID FOR THE WHOLE PERIOD OF DELAY.

IF PAYMENT DUE DATE FALLS ON A SATURDAY OR NEW YORK BANK HOLIDAY OTHER
THAN A MONDAY, PAYMENT WILL BE EFFECTED ON THE PRECEEDING NEW YORK
BANKING DAY.
IF PAYMENT DUE DATE FALLS ON A SUNDAY OR MONDAY NEW YORK BANK HOLIDAY,
PAYMENT TO BE EFFECTED ON THE FIRST FOLLOWING NEW YORK BANKING DAY.

11.    SECURITY

LATEST 31.08.2009 BUYER SHALL OPEN AN IRREVOCABLE LETTER OF CREDIT FROM
FIRST CLASS EUROPEAN BANK ACCEPTED BY SELLER AND SELLER'S BANK, IN A
WORDING ACCEPTABLE TO SELLER AND SELLER'S BANK AND PAYABLE AT SELLER'S
BANK COUNTERS WITH COPY TO SELLERS.

COPY OF THIS LETTER OF CREDIT TO BE SENT TO LEMVIG OIL TRADING S.A.
GENEVA, ATTN MILA ZAKHAROVA AT M.ZAKHAROVA@LEMVIG.CH

THE BANK OPENING THE LETTER OF CREDIT MUST BE ACCEPTED BY THE SELLER'S
ADVISING BANK. IN CASE SELLER'S ADVISING BANK REQUIRES BUYER'S BANK TO
HAVE THE LETTER OF CREDIT CONFIRMED THEN THE COSTS OF CONFIRMATION WILL
BE FOR THE BUYER.
ALL BANKING CHARGES ARE FOR BUYER'S ACCOUNT, EXCEPT ADVISING COSTS WHICH
ARE FOR THE SELLER'S ACCOUNT.

INSTEAD OF OPENING LETTER OF CREDIT AS STATED ABOVE, BUYER HAS THE RIGHT
TO MAKE PREPAYMENT TO THE SELLER LATEST 31.08.2009. PREPAYMENT SHALL BE
MADE IN FULL BY BUYER BY TELEGRAPHIC TRANSFER IN US DOLLARS IN CLEARED
FUNDS WITHOUT ANY OFFSET, DEDUCTION, COUNTER-CLAIM OR WITHHOLDING TO
SELLERS NOMINATED ACCOUNT AGAINST SELLER'S PPREPAYMENT INVOICE (FAX OR
EMAIL COPY) BASED ON LATEST AVAILABLE PLATTS QUOTATION.
IN CASE OF DELAY OF PREPAYMENT RECEIPT TO SELLER'S ACCOUNT BUYER IS
RESPONSIBLE FOR ALL DEMURRAGE OCCURED DUE TO THIS DELAY. UPON RECEIPT OF
THIS PREPAYMENT AT SELLER'S BANK ACCOUNT SELLER SHALL INSTRUCT THE
VESSEL TO DISCHARGE THE PRODUCT. FINAL PAYMENT SHALL BE DONE ACCORDING
TO CLAUSE 10 OF THE PRESENT CONTRACT.

IN CASE OF DELAY OF PREPAYMENT OR LETTER OF CREDIT RECEIPT BY SELLER
BUYER IS RESPONSIBLE FOR ALL DEMURRAGE OCCURED DUE TO THIS DELAY.

VESSEL WILL NOT DISCHARGE UNTIL RECEIPT OF PREPAYMENT IN FULL AT
SELLER'S BANK ACCOUNT OR RECEIPT BY SELLER OF LETTER OF CREDIT ISSUED AS
STATED ABOVE.

THE OPENING OR ISSUANCE OF ANY LETTER OF CREDIT OR PREPAYMENT SHALL NOT
DISCHARGE BUYER'S PAYMENT OBLIGATIONS UNDER THIS CONTRACT AND SUCH
PAYMENT OBLIGATIONS SHALL BE DISCHARGED ONLY TO THE EXTEND OF SELLER'S
ACTUAL RECEIPT OF PAYMENT UNDER THE LETTER OF CREDIT OR FINAL SETTLEMENT
IN CASE SELLER MAKES PREPAYMENT INSTEAD OF OPENING LETTER OF CREDIT.

FAILURE BY BUYER TO DELIVER TO SELLER THE ORIGINAL LETTER OF CREDIT
INCLUDING ALL REQUIRED AMENDMENTS OR MAKE PREPAYMENT AS SPECIFIED ABOVE
SHALL BE CONSIDERED A BREACH OF THIS CONTRACT. UPON SUCH BREACH, SELLER
SHALL HAVE THE RIGHT UPON WRITTEN NOTICE TO BUYER TO CANCEL THIS
CONTRACT WITHOUT IN ANY WAY LIMITING ANY OTHER REMEDIES AVAILABLE

12.    DETERMINATION OF QUANTITY AND QUALITY:

QUANTITY IN MT AS STATED IN BILL OF LADING ISSUED AT TURKMENBASHI AND
QUALITY STATED IN SGS QUALITY REPORT ISSUED AT LOADPORT TURKMENBASHI,
TURKMENISTAN, SHALL BE FINAL AND BINDING UPON BOTH PARTIES.

*A.K.*

13. LAYTIME:

LAYTIME AT DISPORT AS PER CP

14. DEMURRAGE:

DEMURRAGE AT DISPORT AS PER CP.

15. TITLE & RISK:

TITLE TO AND RISK OF LOSS SHALL PASS FROM SELLER TO BUYER AT LOADPORT
AS THE PRODUCT PASSES THE CONNECTION BETWEEN VESSEL'S MANIFOLD AND
FLANGE OF SUPPLYING SHORELINE.

16. FORCE MAJEURE:

IN THE EVENT EITHER PARTY IS RENDERED UNABLE, WHOLLY OR IN PART, TO
PERFORM ITS OBLIGATIONS UNDER THIS AGREEMENT OTHER THAN TO MAKE
PAYMENTS DUE HEREUNDER DUE TO ACTS OF GOD, FLOOD, FIRE, EXPLOSION;
NAVIGATIONAL ACCIDENTS; VESSEL DAMAGE OR LOSS; ACCIDENTS AT OR
CLOSING OF NAVIGATIONAL OR TRANSPORTATIONAL MECHANISMS; ADVERSE
WEATHER OR STORMS; STRIKES, GRIEVANCES OR ACTIONS BY OR AMONG
WORKERS, LOCKOUTS, OR OTHER LABOR DISTURBANCES; WARS OR ANY LAW,
RULE, ORDER, OR ACTION OF ANY COURT OR INSTRUMENTALITY OF THE
FEDERAL, STATE OR LOCAL GOVERNMENT OR BY ANY PERSON PURPORTING TO
REPRESENT A GOVERNMENT; OR FOR ANY OTHER CAUSE OR CAUSES BEYOND ITS
REASONABLE CONTROL, IT IS AGREED THAT ON SUCH PARTY'S GIVING NOTICE
AND FULL PARTICULARS OF SUCH FORCE MAJEURE TO THE OTHER PARTY WITHIN
48 HOURS. THE OBLIGATION OF THE PARTY GIVING SUCH NOTICE SHALL BE
SUSPENDED FROM THE DATE OF RECEIPT OF SUCH NOTICE AND FOR THE
CONTINUANCE OF ANY INABILITY SO CAUSED, BUT FOR NO LONGER PERIOD, AND
SUCH CAUSE SHALL, SO FAR AS POSSIBLE, BE REMEDIED WITH ALL REASONABLE
DISPATCH.

IF ANY FAILURE, OMISSION OR DELAY IN PERFORMANCE DUE TO FORCE MAEJURE
CONTINUES FOR MORE THAN THIRTY (30) DAYS FROM THE DATE THE NOTICE OF
SUCH FORCE MAJEURE EVENT IS SENT, THEN EITHER PARTY MAY TERMINATE
THIS AGREEMENT BY WRITTEN NOTICE TO THE OTHER PARTY, AND UPON ANY
SUCH TERMINATION, NEITHER PARTY SHALL HAVE ANY FURTHER LIABILITY TO
THE OTHER EXCEPT THAT SUCH TERMINATION SHALL BE WITHOUT PREJUDICE TO
ANY OTHER ACCRUED RIGHTS.

17. ASSIGNMENT:

THIS AGREEMENT SHALL BE BINDING UPON THE RESPECTIVE SUCCESSORS AND
ASSIGNS OF PARTIES HERETO. NEITHER SELLER NOR BUYER SHALL ASSIGN THE
WHOLE OR ANY PART OF ITS RIGHTS AND OBLIGATIONS HEREUNDER DIRECTLY
OR INDIRECTLY WITHOUT THE PRIOR WRITTEN CONSENT OF THE OTHER PARTY.
IF SUCH WRITTEN CONSENT IS GIVEN AND WHENEVER THE ASSIGNMENT IS MADE,
THE ASSIGNING PARTY SHALL REMAIN JOINTLY AND SEVERALLY LIABLE WITH
THE ASSIGNEE FOR THE FULL PERFORMANCE OF ITS OBLIGATIONS UNDER THIS
AGREEMENT.

18. WARRANTIES:

EXCEPT FOR THE WARRANTY OF TITLE, NO CONDITIONS OR WARRANTIES, EXPRESSED OR IMPLIED, OF MERCHANTABILITY, FITNESS OR SUITABILITY FOR ANY PARTICULAR PURPOSE, OR OTHERWISE, ARE MADE BY SELLER OTHER THAN THAT THE PRODUCT CONFORMS WITHIN ANY TOLERANCES TO THE DESCRIPTION STATED HEREIN.

19. GOVERNING LAW AND JURISDICTION:

THIS CONTRACT SHALL BE CONSTRUED AND GOVERNED BY THE LAWS OF ENGLAND WITH JURISDICTION IN THE HIGH COURT OF ENGLAND AND WALES TO THE EXCLUSION OF ANY OTHER LEGAL SYSTEM.

RESOLUTION OF DISPUTES ARISING UNDER THIS AGREEMENT BY ARBITRATION IS SPECIFICALLY EXCLUDED.

IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES OR LOST PROFITS OR SPECIFIC PERFORMANCE.

20. NON-PERFORMANCE CLAUSE:

SUBJECT OF BANKRUPTCY OR INSOLVENCY PROCEEDINGS, OR (E) FAIL TO PAY ANY UNDISPUTED OBLIGATION TO THE OTHER PARTY (THE PERFORMING "PARTY") IN AN AMOUNT GREATER THAN USD 500,000 AND SUCH FAILURE CONTINUES FOR TWO (2) BUSINESS DAYS AFTER WRITTEN NOTICE OF NON-PAYMENT BY THE PERFORMING PARTY; THEN THE PERFORMING PARTY MAY (IN ADDITION TO ALL OTHER RIGHTS IT MAY HAVE) BY WRITTEN NOTICE IMMEDIATELY LIQUIDATE THE AGREEMENT, ANY OTHER FORWARD CONTRACTS, AND ALL DERIVATIVE, OPTION, AND SWAP AGREEMENTS THEN OUTSTANDING BETWEEN THE PARTIES. UPON LIQUIDATION, THIS AGREEMENT, ALL FORWARD CONTRACTS, AND ALL DERIVATIVE, OPTION, AND SWAP AGREEMENTS SHALL TERMINATE AND THE PERFORMING PARTY SHALL CALCULATE THE DIFFERENCE BETWEEN THE MARKET VALUE (BASED ON THEN CURRENT MARKET PRICE FOR DELIVERY AS CONTRACTED) AND CONTRACT VALUE (BASED ON THE CONTRACTED QUANTITY AND PRICES) OF EACH TERMINATED CONTRACT /AGREEMENT. IN EACH CASE WHERE THE MARKET VALUE EXCEEDS THE CONTRACT VALUE, THE DIFFERENCE SHALL BE DUE TO THE BUYER: WHERE THE CONTRACT VALUE EXCEEDS THE MARKET VALUE, THE DIFFERENCE SHALL BE DUE TO THE SELLER. EACH CALCULATED AMOUNT SHALL BE DISCOUNTED TO PRESENT VALUE AT THE THEN-PREVAILING LIBOR RATE ON EURODOLLAR DEPOSITS FOR THE APPLICABLE DISCOUNTED TIME PERIOD, AS OF THE DATE OF LIQUIDATION, AND THE DISCOUNTED AMOUNTS SHALL BE AGGREGATED AND SET-OFF TO A SINGLE NET LIQUIDATED AMOUNT PAYABLE ON WRITTEN DEMAND BY ONE PARTY TO THE OTHER. SUCH DEMAND SHALL INCLUDE A STATEMENT IN REASONABLE DETAIL AS TO THE CALCULATED AMOUNTS. THE PARTIES WAIVE ALL OTHER NOTICES, INCLUDING NOTICE OF INTENT TO LIQUIDATE.

IF IN THE REASONABLE OPINION OF THE OTHER PARTY, A MATERIAL ADVERSE CHANGE OCCURS IN THE FINANCIAL CONDITION OF EITHER PARTY THAT, IN THE REASONABLE OPINION OF SUCH OTHER PARTY, MATERIALLY AND ADVERSELY AFFECTS THE ABILITY OF SUCH PARTY TO PERFORM ITS OBLIGATIONS UNDER THIS CONTRACT, SUCH PARTY SHALL WITHIN A REASONABLE TIME FOLLOWING A WRITTEN REQUEST MADE AT ANY TIME AFTER SUCH CHANGE PROVIDE SECURITY IN FORM AND SUBSTANCE REASONABLY SATISFACTORY TO THE REQUESTING PARTY. FAILURE TO PROVIDE SECURITY SHALL CONSTITUTE A DEFAULT BY SUCH PARTY UNDER THIS AGREEMENT AND SUBJECT IT TO LIQUIDATION AS DESCRIBED ABOVE.

*A.K.*

IF ANY GUARANTY SECURING ANY PARTY'S OBLIGATIONS UNDER THIS CONTRACT CEASES TO BE IN FULL FORCE AND EFFECT, OR IF ANY GUARANTOR OF A PARTY'S OBLIGATIONS UNDER THIS AGREEMENT BECOMES THE SUBJECT OF BANKRUPTCY OR INSOLVENCY PROCEEDINGS, SUCH EVENT SHALL ALSO CONSTITUTE A DEFAULT AND SUBJECT THIS AGREEMENT TO LIQUIDATION AS DESCRIBED ABOVE.

IF A DEFAULT OCCURS, THE PERFORMING PARTY, MAY WITHOUT LIMITATION OF ITS RIGHTS UNDER THIS SECTION, SET OFF AMOUNTS WHICH THE NON-PERFORMING PARTY OWES TO IT AGAINST ANY AMOUNTS WHICH IT OWES TO THE NON-PERFORMING PARTY (WHETHER HEREUNDER, UNDER A FORWARD CONTRACT OR OTHERWISE) AND WHETHER OR NOT THEN DUE; PROVIDED THAT ANY AMOUNT NOT THEN DUE WHICH IS INCLUDED IN SUCH SET-OFF SHALL BE DISCOUNTED TO PRESENT VALUE AT THE TIME OF SET-OFF (TO TAKE ACCOUNT OF THE PERIOD BETWEEN THE TIME OF SET-OFF AND THE DATE ON WHICH SUCH AMOUNT WOULD OTHERWISE HAVE BEEN DUE) AT THE THEN-PREVAILING LIBOR RATE ON EURODOLLAR DEPOSITS FOR THE APPLICABLE DISCOUNTED TIME PERIOD.

21.OTHER TERMS AND CONDITIONS:

THIS DOCUMENT SHALL BE THE OPERATIVE INSTRUMENT AND SUPERSEDES AND REPLACES ALL PREVIOUS CORRESPONDENCE. NO AMENDMENTS, ADDITIONS, OR ALTERATIONS MAY BE MADE TO THE TERMS AND CONDITIONS OF THIS AGREEMENT WITHOUT WRITTEN AGREEMENT OF BOTH PARTIES.

THIS AGREEMENT SHALL NOT BE SUBJECT TO MODIFICATION OR WAIVER BY ANY COURSE OF PERFORMANCE, COURSE OF DEALING OR USAGE OF TRADE.

WAIVER OF PERFORMANCE OF ANY OBLIGATION BY EITHER BUYER OR SELLER SHALL NOT BE DEEMED A WAIVER OF PERFORMANCE OF OTHER OBLIGATIONS OR FUTURE WAIVER OF THE SAME OBLIGATION.

WHERE NOT IN CONFLICT WITH THE FOREGOING BP GENERAL TERMS AND CONDITIONS SHALL APPLY.

THIS AGREEMENT CONFIRMS OUR ENTIRE AGREEMENT. IN THE EVENT THE ABOVE TERMS AND CONDITIONS ARE NOT IN ACCORDANCE WITH YOUR UNDERSTANDING, PLEASE RESPOND TO THE FOREGOING WITHIN 2 (TWO) WORKING DAYS. IF WE DO NOT HEAR FROM YOU WITHIN THAT TIME OR IF IN THE MEANTIME YOU PERFORM ANY OF YOUR OBLIGATIONS UNDER THIS CONTRACT, WE WILL CONSIDER THESE TERMS AND CONDITIONS FINAL AND BINDING. TO THE EXTENT THAT YOU OBJECT TO ANY PROVISION, THESE TERMS WILL STAND AMENDED ONLY IF AND TO THE EXTENT THAT WE AGREE, IN WRITING, WITH YOUR OBJECTION.

LEMVIG OIL TRADING S.A.                         WILLIS TRADING LTD

# EXHIBIT 3

 **East-West Logistics LLP**

---

**DATE:  27.08.2009**

**MESSRS:** Lemvig Oil Trading S.A.

## Invoice № 090605-123A

**Vessel  NRV-28, NRV-49M,
"Graf", "Saratov City"**

**Port of loading  Turkmenbashi**

**Beneficiary's account:**

USD: IBAN CH56 0868 6001 0870 5300 1
Beneficiary: East-West Logistics LLP, London, UK
Bank: BNP PARIBAS (SUISSE) SA
Bank Address: Place de Hollande 2, 1211, Geneva 11, Switzerland

SWIFT: BPPBCHGG

| Description | Amount , US dollars |
|---|---|
| Freight for NRV-28M, NRV-49M, Graf, Saratov City ex Turkmenbashi | 637,300.51 |
| **TOTAL**, USD Dollars   *(SIX HUNDRED THIRTY SEVEN THTHOUSAND AND THREE HUNDRED, 51 ONLY)* | |

For East-West Logistics LLP



Company Number OC316957
Lasenby House, 32 Kingly Street, London W1B 5QG
Tel +44 20-70060521 Fax +4420-70060538
www.ew-logistics.co.uk
info@ew-logistics.co.uk

```
09.08.28  20:18:46
MT S103  Single Customer Credt Transfer
Priority:     Home Dest  : BBRUCHGTAXXX   ISN: 355077 2B55
              Corr Dest  : BPPBCHGGXXX   SEND TIME : 1525 DATE : 090828
                          *BNP PARIBAS (SUISSE) SA
                          *GENEVA CH
  20: Sender's Reference
      TRF/103240250
 23B: Bank Operation Code
      CRED
 32A: Val Dte/Curr/Interbnk Settld Amt
      Date        : 28 August 2009
      Currency    : USD (US DOLLAR)
      Amount      :              #637300,51#
 33B: Currency/Instructed Amount
      Currency    : USD (US DOLLAR)
      Amount      :              #637300,51#
 50K: Ordering Customer-Name & Address
      /1070841
      LEMVIG OIL TRADING SA
      6,RUE DE LA CONFEDERATION
      GENEVE SWITZERLAND
 53A: Sender's Correspondent - BIC
      BKTRUS33XXX
      DEUTSCHE BANK TRUST COMPANY AMERICAS
      NEW YORK,NY  US
 54A: Receiver's Correspondent - BIC
      BNPAUS3NXXX
      BNP PARIBAS U.S.A - NEW YORK BRANCH
      NEW YORK,NY  US
  59: Beneficiary Customer-Name & Addr
      /CH5608686001087053001
      EAST WEST LOGISTICS LLP
  70: Remittance Information
      INV 090605-123A
 71A: Details of Charges
      BEN
 71F: Sender's Charges
      Currency    : USD (US DOLLAR)
      Amount      :              #0,00#
```

```
09.08.28  20:18:46
MT S202  General Fin Inst Transfer
Priority:      Home Dest    : BBRUCH0TAXXX   ISN: 355078 2855
               Corr Dest    : BKTRUS33XXX    SEND  TIME : 1525 DATE : 090828
                              *DEUTSCHE BANK TRUST COMPANY AMERI
                              *NEW YORK,NY US
  20: Transaction Reference Number
      TRF/103240250
  21: Related Reference
      TRF/103240250
 32A: Value Date, Currency Code,  Amt
      Date          : 28 August 2009
      Currency      : USD (US DOLLAR)
      Amount        :              #637300,51#
 57A: Account With Institution - BIC
      BNPAUS3NXXX
      BNP PARIBAS U.S.A - NEW YORK BRANCH
      NEW YORK,NY  US
 58A: Beneficiary Institution - BIC
      BPPBCHGGXXX
      BNP PARIBAS (SUISSE) SA
      GENEVA  CH
```

# EXHIBIT 4

# WILLIS TRADING LTD

Suite 2, Portland House, Glacis Road, Gibraltar
phone: +44-20-7060 3343, fax: +44-20-7060-3341  e-mail: trading@willis-trading.com

Date: 28.08.2009

From: WILLIS TRADING LTD

To   : BNP Paribas (Suisse) SA, Geneva

Subject : Contract no 101/01/20092108 between WILLIS TRADING LTD and MONOLITH INVESTMENTS AND FINANCIAL SERVICES LTD SA, covering the sale of 2,311.770 metric tons of hydro purified gasoil to be delivered from port of Turkmenbaschi, Turkmenistan by Vessel Graf CIF Kerch/Theodosia during August-September 2009

We hereby give you notice that we have assigned to LEMVIG OIL TRADING SA C/O BNP PARIBAS (SUISSE) SA by way of security all our rights, title and interest in the frame of the above mentioned contract including all claims, awards, judgements and payments arising from the cancellation of the above mentioned contract which may at any time be received or receivable pursuant to the contract.

Consequently:

1. We irrevocably authorise and instruct you to pay all monies due to us in the frame of the above mentioned contract to LEMVIG OIL TRADING SA account with BNP PARIBAS (SUISSE) SA in favour of their account no 86398 / 4 V with them.

2. The instructions contained in this letter cannot be revoked or varied by us without the written consent of BNP PARIBAS (SUISSE) SA. Furthermore, we confirm that no prior notice of assignment has been effected in relation with the above mentioned contract.

Please acknowledge receipt of this Notice of Assignment to.

FOR WILLIS TRADING LTD

# Lilillis  WILLIS TRADING LTD

Suite 2, Portland House, Glacis Road, Gibraltar
phone: +44-20-7060 3343, fax: +44-20-7060-3341  e-mail: trading@willis-trading.com

Date: 28.08.2009

From: WILLIS TRADING LTD

To   : BNP Paribas (Suisse) SA, Geneva

NOTICE OF ASSIGNMENT

Subject : Contract no 101/02/20092108 between WILLIS TRADING LTD and MONOLITH INVESTMENTS AND
FINANCIAL SERVICES LTD SA, covering the sale of 2,184.92 metric tons of hydro purified gasoil to be delivered
from port of Turkmenbaschi, Turkmenistan by Vessel NRV-49 CIF Kerch/Theodosia during August-September 2009

We hereby give you notice that we have assigned to LEMVIG OIL TRADING SA C/ O BNP PARIBAS (SUISSE) SA
by way of security all our rights, title and interest in the frame of the above mentioned contract including all claims,
awards, judgements and payments arising from the cancellation of the above mentioned contract which may at any time
be received or receivable pursuant to the contract.

Consequently:

1. We irrevocably authorise and instruct you to pay all monies due to us in the frame of the above mentioned contract to
LEMVIG OIL TRADING SA account with BNP PARIBAS (SUISSE) SA
in favour of their account no 86398 / 4 V with them.

2. The instructions contained in this letter cannot be revoked or varied by us without the written consent of BNP
PARIBAS (SUISSE) SA. Furthermore, we confirm that no prior notice of assignment has been effected in relation with
the above mentioned contract.

Please acknowledge receipt of this Notice of Assignment to.

FOR WILLIS TRADING LTD

# ⌊⌊⅃⌶⌈⌊ᵢⅉ **WILLIS TRADING LTD**

Suite 2, Portland House, Glacis Road, Gibraltar
phone: +44-20-7060 3343, fax: +44-20-7060-3341 e-mail: trading@willis-trading.com

Date: 28.08.2009

From: WILLIS TRADING LTD

To  : BNP Paribas (Suisse) SA, Geneva

Subject : Contract no 101/01/20092108 between WILLIS TRADING LTD and MONOLITH INVESTMENTS AND FINANCIAL SERVICES LTD SA, covering the sale of 2,311.770 metric tons of hydro purified gasoil to be delivered from port of Turkmenbaschi, Turkmenistan by Vessel Graf CIF Kerch/Theodosia during August-September 2009

We hereby give you notice that we have assigned to LEMVIG OIL TRADING SA C/ O BNP PARIBAS (SUISSE) SA by way of security all our rights, title and interest in the frame of the above mentioned contract including all claims, awards, judgements and payments arising from the cancellation of the above mentioned contract which may at any time be received or receivable pursuant to the contract.

Consequently:

1. We irrevocably authorise and instruct you to pay all monies due to us in the frame of the above mentioned contract to LEMVIG OIL TRADING SA account with BNP PARIBAS (SUISSE) SA
in favour of their account no 86398 / 4 V with them.

2. The instructions contained in this letter cannot be revoked or varied by us without the written consent of BNP PARIBAS (SUISSE) SA. Furthermore, we confirm that no prior notice of assignment has been effected in relation with the above mentioned contract.

Please acknowledge receipt of this Notice of Assignment to.

**FOR WILLIS TRADING LTD**

# WILLIS TRADING LTD

Suite 2, Portland House, Glacis Road, Gibraltar

phone: +44-20-7060 3343, fax: +44-20-7060-3341 e-mail: trading@willis-trading.com

Date: 28.08.2009

From: WILLIS TRADING LTD

To    : BNP Paribas (Suisse) SA, Geneva

### NOTICE OF ASSIGNMENT

Subject : Contract no 101/02/20092108 between WILLIS TRADING LTD and MONOLITH INVESTMENTS AND FINANCIAL SERVICES LTD SA, covering the sale of 2,184.92 metric tons of hydro purified gasoil to be delivered from port of Turkmenbaschi, Turkmenistan by Vessel NRV-49 CIF Kerch/Theodosia during August-September 2009

We hereby give you notice that we have assigned to LEMVIG OIL TRADING SA C/O BNP PARIBAS (SUISSE) SA by way of security all our rights, title and interest in the frame of the above mentioned contract including all claims, awards, judgements and payments arising from the cancellation of the above mentioned contract which may at any time be received or receivable pursuant to the contract.

Consequently:

1. We irrevocably authorise and instruct you to pay all monies due to us in the frame of the above mentioned contract to LEMVIG OIL TRADING SA account with BNP PARIBAS (SUISSE) SA in favour of their account no 86398 / 4 V with them.

2. The instructions contained in this letter cannot be revoked or varied by us without the written consent of BNP PARIBAS (SUISSE) SA. Furthermore, we confirm that no prior notice of assignment has been effected in relation with the above mentioned contract.

Please acknowledge receipt of this Notice of Assignment to.

FOR WILLIS TRADING LTD

# EXHIBIT 5

# LEM>IG

To: Willis Trading Ltd.

Geneva, 16 September 2009

## Ref: Contract no. 220809 dated 22.08.09 / MT NRV-49M BL dd 15.08.09

Dear Sirs

By this letter our company Lemvig Oil Trading S.A. regrets to inform you that as of today we have not received any payment or letter of credit as per clause 11 of our contract no. 220809 dated 22.08.09. Therefore Willis Trading Ltd. is in breach of the contract and as per clause 11 of contract no. 220809 dated 22.08.09 we cancel the contract. The contract is now nul and void.

QUOTE

FAILURE BY BUYER TO DELIVER TO SELLER THE ORIGINAL LETTER OF CREDIT INCLUDING ALL REQUIRED AMENDMENTS OR MAKE PREPAYMENT AS SPECIFIED ABOVE SHALL BE CONSIDERED A BREACH OF THIS CONTRACT. UPON SUCH BREACH, SELLER SHALL HAVE THE RIGHT UPON WRITTEN NOTICE TO BUYER TO CANCEL THIS CONTRACT WITHOUT IN ANY WAY LIMITING ANY OTHER REMEDIES AVAILABLE

UNQUOTE

Without prejudice to our rights we keep Willis Trading Ltd. fully responsible for all losses connected with this breach of the contract, including but not limited by vessel's demurrage costs occurred while awaiting prepayment or letter of credit from Willis Trading Ltd.

Best regards



Lemvig Oil Trading S.A.

Lemvig Oil Trading S.A.
5, rampe de la Treille
1204 Geneva
Switzerland

+ 41 (022) 311 11 28 T
+ 41 (022) 311 11 48 F
✉ info@lemvig.com

# LEM>IG

To: Willis Trading Ltd.

Geneva, 16 September 2009

## Ref: Contract no. 210809 dated 21.08.09 / MT Graf BL dd 10.08.09

Dear Sirs

By this letter our company Lemvig Oil Trading S.A. regrets to inform you that as of today we have not received any payment or letter of credit as per clause 11 of our contract no. 210809 dated 21.08.09. Therefore Willis Trading Ltd. is in breach of the contract and as per clause 11 of contract no. 210809 dated 21.08.09 we cancel the contract. The contract is now nul and void.

QUOTE

FAILURE BY BUYER TO DELIVER TO SELLER THE ORIGINAL LETTER OF CREDIT INCLUDING ALL REQUIRED AMENDMENTS OR MAKE PREPAYMENT AS SPECIFIED ABOVE SHALL BE CONSIDERED A BREACH OF THIS CONTRACT. UPON SUCH BREACH, SELLER SHALL HAVE THE RIGHT UPON WRITTEN NOTICE TO BUYER TO CANCEL THIS CONTRACT WITHOUT IN ANY WAY LIMITING ANY OTHER REMEDIES AVAILABLE.

UNQUOTE

Without prejudice to our rights we keep Willis Trading Ltd. fully responsible for all losses connected with this breach of the contract, including but not limited by vessel's demurrage costs occurred while awaiting prepayment or letter of credit from Willis Trading Ltd.

Best regards

Lemvig Oil Trading S.A.



**Lemvig** Oil Trading S.A.
5, rampe de la Treille
1204 Geneva
Switzerland

+ 41 (022) 311 11 28 T
+ 41 (022) 311 11 48 F
info@lemvig.com

# EXHIBIT 6

# LEM>IG

To: East-West Logistics LLP

Geneva, 16 September 2009

## Ref: MT Graf BL dd 10.08.09

Dear Sirs

By this letter our company Lemvig Oil Trading S.A. instructs the master of MT «Graf» loaded with 2,311,770 MT (BL quantity) of hydropurified gas oil in Turkmenbashi BL no. 470/UT3 dated 10.08.09 to sail to Varna, Bulgaria and wait for our further instructions. Please provide us with vessel notices regarding the current position and ETA Varna, Bulgaria.

Thanks in advance for your prompt cooperation

Best regards

Lemvig Oil Trading S.A.

Lemvig Oil Trading S.A.
5, rampe de la Treille
1204 Geneva
Switzerland

+ 41 (022) 311 11 28 T
+ 41 (022) 311 11 48 F
✉ info@lemvig.com

# LEM>IG

To: East-West Logistics LLP

Geneva, 16 September 2009

## Ref: MT Nefterudovoz-49M BL dd 15.08.09

Dear Sirs

By this letter our company Lemvig Oil Trading S.A. instructs the master of MT «Nefterudovoz-49M» loaded with 2,184,920 MT (BL quantity) of hydropurified gas oil in Turkmenbashi BL no. 482 UT3 dated 15.08.09 to sail to Varna, Bulgaria and wait for our further instructions. Please provide us with vessel notices regarding the current position and ETA Varna, Bulgaria.

Thanks in advance for your prompt cooperation

Best regards

Lemvig Oil Trading

Lemvig Oil Trading S.A.
5, rampe de la Treille
1204 Geneva
Switzerland

+ 41 (022) 311 11 28 T
+ 41 (022) 311 11 48 F
✉ info@lemvig.com